UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| RONALD ALVERSON, SCS CARBON TRANSPORT LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>BROWN COUNTY, SOUTH DAKOTA, BROWN COUNTY BOARD OF COMMISSIONERS, DUANE SUTTON, IN HIS OFFICIAL CAPACITY AS A BROWN COUNTY COMMISSIONER; MIKE WIESE, IN HIS OFFICIAL CAPACITY AS A BROWN COUNTY COMMISSIONER; DENNIS FEICKERT, IN HIS OFFICIAL CAPACITY AS A BROWN COUNTY COMMISSIONER; DOUG FJELDHEIM, IN HIS OFFICIAL CAPACITY AS A BROWN COUNTY COMMISSIONER; AND MIKE GAGE, IN HIS OFFICIAL CAPACITY AS A BROWN COUNTY COMMISSIONER;<br><br>Defendants. | 3:22-CV-03018-RAL<br><br><br><br>OPINION AND ORDER DENYING MOTION TO DISMISS |

On November 10, 2022, Ronald Alverson (Alverson) and SCS Carbon Transport LLC (SCS) filed an Amended Complaint seeking declaratory and injunctive relief against the enforcement of Brown County, South Dakota's temporary moratorium on pipeline permitting and construction, claiming that the Pipeline Safety Act preempts the moratorium. Doc. 7. Defendants filed a Motion to Dismiss, arguing that this Court lacks subject matter jurisdiction because the Plaintiffs lack standing and their claims are not yet ripe. Doc. 14. On May 22, 2023, this Court

1

held a hearing on that motion to dismiss and heard argument from the parties. Because Plaintiffs have alleged in the Amended Complaint a concrete injury in fact caused by the moratorium that has created heightened uncertainty affecting Plaintiff SCS's behavior, Defendants' Motion to Dismiss is denied, though Defendants may raise similar arguments or a mootness challenge through a later motion for summary judgment.

I.  **Standard Governing Motion to Dismiss Presenting a Facial Challenge**

"In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993). In any case, "[t]he burden of proving subject matter jurisdiction falls on the plaintiff." V S Ltd. P'ship v. Dep't of Hous. & Urban Dev., 235 F.3d 1109, 1112 (8th Cir. 2000). A facial challenge is limited to the allegations in the plaintiffs' complaint, and the court must view the allegations in the light most favorable to the plaintiffs. Stalley v. Cath. Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007). For a claim to survive a motion to dismiss presenting a facial challenge "[t]he plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims . . . , rather than facts that are merely consistent with such a right." Id. Defendants conceded in the hearing that they make a facial challenge to jurisdiction, so this Court takes the facts at this stage from Plaintiffs' Amended Complaint and views the allegations in the light most favorable to Plaintiffs. See Great Rivers Habitat All. v. Fed. Emergency Mgmt. Agency, 615 F.3d 985, 988 (8th Cir. 2010).

II.  **Facts Alleged in the Amended Complaint**

Plaintiffs are involved in the ethanol industry. Ethanol is an alternative fuel commonly made from corn. Corn is South Dakota's leading agricultural commodity with South Dakotans producing corn worth $4.1 billion in 2021. Doc. 7 ¶ 15. More than half of South Dakota corn

goes towards ethanol production. Id. ¶ 16. Corn's value in South Dakota is tied to ethanol production. Id. ¶ 18. Alverson owns a 2,200-acre farm in Lake County, South Dakota, which is primarily used to produce corn. Id. ¶ 40. Alverson also holds an ownership interest in several ethanol production companies, including being a founder and part owner of the Dakota Ethanol plant in Lake County, South Dakota. Id. ¶¶ 41–44.

Carbon dioxide is a greenhouse gas that poses environmental concerns when released into the atmosphere in large quantities and is a byproduct of ethanol production. Id. ¶¶ 20–21. Global warming resulting from human industrialization has altered the Earth's climate and caused nations like Canada and states including California and Oregon to adopt low carbon or clean fuel standards compelling fuel producers to reduce carbon emissions. Id. ¶¶ 24–28. The future of South Dakota's ethanol industry depends at least in part on the industry implementing strategies to reduce carbon emissions. Id. ¶ 29.

A process called carbon capture sequestration occurs when carbon dioxide is captured at the point of generation and then transported, often in a pipeline, to be safely stored underground to prevent release of carbon dioxide into the atmosphere. Id. ¶¶ 22, 30. SCS is in the process of developing a 1,900-mile-long interstate pipeline system to transport carbon dioxide across five states to sequestration sites in geological formations beneath North Dakota. Id. ¶ 30. The route for the proposed pipeline includes 450 miles of pipeline in South Dakota to transport carbon dioxide from several ethanol production facilities, including from Dakota Ethanol in which Alverson has an ownership interest. Id. ¶¶ 32, 41. SCS projects that its proposed pipeline will cross 18 counties in South Dakota, including Brown County.[1] Id. ¶ 33. SCS "is in the process of

---

[1] This projected route has led to the filing of four separate lawsuits with this Court. See Alverson v. Brown Cnty., et al., 3:22-CV-3018-RAL; Alverson v. Edmunds Cnty., et al., 3:22-CV-3019-

surveying the routes for the project and securing the necessary permits." Id. ¶ 34. SCS filed its application for a permit with the South Dakota Public Utilities Commission (PUC) in February 2022, and, as of the time of this opinion, the application is still pending. Id. ¶ 35.[2]

On July 19, 2022, the Brown County Board of Commissioners unanimously approved Resolution #33-22, which established a moratorium on new conditional use permits and building permits for hazardous waste pipelines in the county. Id. ¶ 47; Doc. 1-1; Doc. 17-1. Following a series of WHEREAS clauses, the resolution reads:

> **NOW, THEREFORE, BE IT RESOLVED**, that the Board of Brown County Commissioners does hereby impose a temporary moratorium on the issuance of any and all permits, licenses, or approvals for the construction, installation, or use of any transmission pipeline requiring the approval of the South Dakota Public Utilities Commission, traversing those lands contained within the unincorporated areas of Brown County, South Dakota, including the construction of any transmission pipeline related infrastructure, with said moratorium running for such a length of time that will give the Planning and Zoning Commission an opportunity to complete their review process or one year from the date of this Resolution is enacted.

Doc. 7 at 19, Ex. A.[3] The "main artery of the pipeline is planned to run through Brown County," so while the mortarium is in place SCS is prevented from "completing—or even beginning—the portion of the pipeline project in Brown County" so "the full interstate pipeline cannot be completed or placed into operation." Id. ¶¶ 53–54.

Plaintiffs claim that because Brown County relies in part on "the health, safety, and general welfare" to justify its mortarium, the mortarium is preempted by the Pipeline Safety Act (PSA).

---

RAL (dismissed without prejudice); Alverson v. McPherson Cnty., et al., 3:22-CR-3022-RAL; Alverson v. Spink Cnty., et al., 3:22-CV-3023-RAL.
[2] Per the February minutes of the PUC, November 15, 2023, has been set as the date for the final decision and order on SCS's permit application. Leah Mohr, Minutes of Commission Meeting, S.D. Pub. Utils. Comm'n (Feb. 9, 2023), https://puc.sd.gov/minutes/2023/0209.aspx.
[3] Even though this is a facial challenge, the Amended Complaint references the resolution and thus the actual text of the resolution is not considered to be outside the pleadings. Dittmer Props., L.P. v. FDIC, 708 F.3d 1011, 1021 (8th Cir. 2013) (cleaned up and citation omitted).

Id. ¶ 55; see Docs. 1-1, 17-1 ("WHEREAS, to promote the health, safety, and general welfare of the County . . . ."). The purpose of the PSA "is to provide adequate protection against risks to life and property posed by pipeline transportation and pipeline facilities by improving the regulatory and enforcement authority of the Secretary of Transportation." 49 U.S.C.A. § 60102(a)(1).

Despite making a facial attack on the Amended Complaint, Defendants' arguments for dismissal for lack of standing and ripeness rely on information outside of the Amended Complaint.[4] Defendants argue: 1) SCS lacks state permits from South Dakota, Iowa, Minnesota, or North Dakota necessary to build the pipeline system, Doc. 15 at 5; Doc. 18 at 5; 2) "Brown County is not planning to pass an ordinance fully banning the construction of the plaintiffs' pipeline" and may not renew the moratorium after July 2023, Doc. 15 at 6; Doc. 18 at 7; 3) SCS has substantial litigation pending in state courts that challenge eminent domain authority to construct the pipeline, Doc. 15 at 6; and 4) the PUC will not even conduct an evidentiary hearing on the state permit application until September 2023, Doc. 18 at 7. Defendants present these matters in their brief, and the only affidavit filed simply attaches Resolution # 33-22 creating the

---

[4] Defendants' brief, Doc. 15, cites the standard for a factual attack on jurisdiction, which permits the court to "weigh the evidence and satisfy itself as to the existence of its power to hear the case," without transforming the motion into one for summary judgment. Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990) (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3rd Cir. 1977)); see also Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445, 451 (6th Cir. 1988) ("When a challenge is to the actual subject matter jurisdiction of the court, as opposed to the sufficiency of the allegation of subject matter jurisdiction in the complaint which may be cured by an amendment to the pleading, the district court has the power to resolve any factual dispute regarding the existence of subject matter jurisdiction."). In a factual attack on a court's jurisdiction, "the court considers matters outside the pleadings, and the non-moving party does not have the benefit of [Rule] 12(b)(6) safeguards." Osborn, 918 F.2d at 729 n.6 (internal citation removed). Here subject matter jurisdiction exists under 28 U.S.C. § 1331 in that Plaintiffs seek a declaratory judgment that the PSA under its language and the Supremacy Clause of Article IV, Clause 2 of the Constitution preempts Brown County's moratorium. Doc. 7 ¶¶ 12–13, 63–70. There is no argument of an absence of personal jurisdiction. Rather Defendants present standing and ripeness agreements and acknowledged at the May 22 hearing that they have made a facial challenge to jurisdiction.

moratorium and a subsequent Ordinance #25 adopted March 29, 2022, establishing multiple minimum setback requirements. Doc. 17; Doc. 17-1; Doc. 17-2. From that material, Defendants argue that Plaintiffs lack standing and do not have a ripe claim because so many obstacles aside from Brown County's mortarium inhibit any start to the pipeline. Yet, even if this Court were inclined to treat the motion to dismiss as one for summary judgment under Federal Rules of Civil Procedure 12(d) and 56 so as to consider matters outside the pleadings, Defendants did not file affidavits or request for judicial notice for this Court to draw into the record the facts from which Defendants argue.[5]

### III. Discussion

To have standing, a plaintiff invoking the judicial process must establish the following: (1) an "injury in fact" to plaintiff that is "concrete and particularized" as well as "actual or imminent" rather than "conjectural or hypothetical," (2) "a causal connection between the injury and the conduct complained of" exists, and (3) an injury where the capacity of a favorable opinion to redress is "likely," and not merely "speculative." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992) (cleaned up and citations omitted). Each element of standing must be supported with the same degree of evidence as any other matter on which a plaintiff bears the burden of proof at the particular stage of litigation. Id. at 561. "Standing may be found when there is a concrete and demonstrable injury to an organization's activities which drains its resources and is more than simply a setback to its abstract social interests." Nat'l Fed'n of Blind of Mo. v. Cross, 184 F.3d 973, 979 (8th Cir. 1999). A question of preemption can constitute injury-in-fact. See Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 201–02 (1983) ("To

---

[5] In fairness, much of what Defendants argue factually seems to be true, at least based on widespread news coverage of SCS's plans and the opposition these plans have engendered. These matters, however, are outside the pleadings at this point.

6

require the industry to proceed without knowing whether the moratorium is valid would impose a palpable and considerable hardship . . . ."); Missouri v. Biden, 576 F. Supp. 3d 622, 630 (E.D. Mo. 2021); Weaver's Cove Energy, LLC v. R.I. Coastal Res. Mgmt. Council, 589 F.3d 458, 468 (1st Cir. 2009).

Related to standing as one of the justiciability doctrines, ripeness concerns whether the plaintiff brings the claim at the proper time. See Vogel v. Foth & Van Dyke Assocs., 266 F.3d 838, 840 (8th Cir. 2001). Ripeness requires that there be "a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." Neb. Pub. Power Dist. v. MidAmerican Energy Co., 234 F.3d 1032, 1037–38 (8th Cir. 2000) (cleaned up and citations omitted). "In addition to being fit for judicial resolution, an issue must be such that delayed review will result in significant harm. 'Harm' includes both the traditional concept of actual damages—pecuniary or otherwise—and also the heightened uncertainty and resulting behavior modification that may result from delayed resolution." Id. at 1038. A party does not need to wait for actual harm to occur for a claim to be ripe. S.D. Mining Ass'n v. Lawrence Cnty., 155 F.3d 1005, 1008–09 (8th Cir. 2000). Claims are not ripe, however, when they rest on "contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998) (cleaned up and citations omitted).

Plaintiffs allege that the moratorium prevents them from even beginning work relating to the portion of the pipeline running through Brown County. Doc. 7 ¶¶ 53–54. Based on the allegations of the Amended Complaint, Plaintiffs appear to have standing. Plaintiff Alverson has a vested interest in corn prices and in Dakota Ethanol, an ethanol plant that plans to have carbon capture by use of the SCS pipeline. Plaintiff SCS is the entity proposing to build the carbon pipeline through Brown County, where a moratorium prevents any such construction presently.

7

Plaintiffs have alleged an injury in fact that is concrete and particularized and actual; the moratorium is in place now and blocks proceeding with the SCS pipeline in Brown County. There is a causal connection between this alleged injury and the Defendants' adoption of the moratorium. Declaring the moratorium to violate the PSA and to be preempted by federal law would redress the claimed injury.

Plaintiffs appear to face multiple hurdles to surmount to construct the carbon capture pipeline, but the Brown County moratorium certainly is one of those hurdles. Yet granting a motion to dismiss simply because so many other obstacles to SCS's pipeline exist would prevent SCS from taking legal action aimed at eliminating one such obstacle. If such an argument as Defendants make justifies dismissal here, each defendant facing a suit filed by SCS to eliminate an obstacle could point to so many other obstacles and allege an absence of standing or ripeness. Whether Plaintiffs can eliminate all the impediments to constructing the pipeline is unknown, but it would be improper to dismiss their cases simply because state approvals are pending, other eminent domain lawsuits exist, or the County might let the moratorium lapse in the future. Plaintiffs claim the PSA preempts the moratorium, and compliance with preempted law can be a hardship. Pac. Gas & Elec. Co., 461 U.S. at 201–02. Moreover, the existence of the moratorium could complicate attempts to contract for easements with Brown County landowners. Alverson's case for standing and ripeness is more attenuated than that of SCS, but as a corn producer with an ownership interest in one of the ethanol plants to be served by the pipeline he has alleged enough of an interest and real injury to have his claim survive the motion to dismiss.

Taking the allegations of the Amended Complaint as true, Plaintiffs' claims appear to be ripe because there is a real, substantial controversy over whether the PSA preempts Defendants' moratorium on pipeline construction. A heightened uncertainty and resulting behavior

modification by a plaintiff due to delayed resolution can suffice to satisfy ripeness concerns. Neb. Pub. Power Dist., 234 F.3d at 1037–38. If Brown County allows the moratorium to expire in July 2023 as Defendants' briefing suggests, the dispute over the moratorium might become moot. Those future possibilities, however, do not render the Plaintiffs' challenge to the moratorium—in place when the suit was filed and still in place today—to not be ripe or otherwise fail for lack of standing.

The parties both cite to cases from the United States Court of Appeals for the First Circuit. In one case, the First Circuit found the case was not ripe when any approval by one government body was not a final decision fit for judicial review because it was explicitly conditioned on obtaining approval from another two agencies. See City of Fall River v. FERC, 507 F.3d 1, 7 (1st Cir. 2007). In the other case, the First Circuit found the dispute ripe because a decision in the plaintiff's favor would remove "barriers to ultimate approval of the project" even though additional steps needed to be taken, reasoning that while "[i]t is true that resolutions of these issues might not secure the project's ultimate approval," the court's opinion "would neither be 'advisory' nor 'irrelevant.'" Weaver's Cove Energy, LLC, 589 F.3d at 469. This situation is closer to that in Weaver's Cove Energy in that a decision on whether the PSA preempts Brown County's moratorium, at least at this time, would be neither advisory nor irrelevant. Because of the heightened uncertainty to SCS caused by whether Defendants' moratorium is preempted by federal law and the resulting potential for delay caused by the moratorium on Plaintiffs' attempts to advance the pipeline project, the claim is ripe and Plaintiffs have standing.

## IV. Conclusion and Order

For the reasons explained in this Opinion and Order, it is

ORDERED that Defendant's Motion to Dismiss, Doc. 14, is denied.

DATED this 1st day of June, 2023.

                                BY THE COURT:

                                ROBERTO A. LANGE
                                CHIEF JUDGE